[No. 629.   August 5, 1896.]

A. M. GENTILE, APPELLEE, v. CHARLES W. KENNEDY, MARGARET CROSSAN, AND ELLIOTT CROSSAN, APPELLANTS.

TITLE TO LAND, SUIT TO QUIET—POSSESSION—SEIZIN.—The possession of one entering upon land under a deed is coextensive with the land described in the deed; and where two persons are in actual possession of different parts of a tract of land, holding under adverse deeds, covering also land in dispute between them, the seizin of the land not in the actual occupancy of the adverse party is in him who has the better title. 3 Wash. Real Prop. 138; Clark v. Courtney, 5 Pet. 354.

ID.—EQUITY JURISDICTION.—In a suit to quiet title to land, where the constructive possession under the deed and the actual possession of part of the land showed the pedis possessio to be in complainant, and, moreover, neither party was in the actual or constructive possession, and there was no tenant to the praecipe against whom ejectment could be brought, equity alone could give relief.

APPEAL, from a decree for complainant, from the First Judicial District Court, Santa Fe County. Affirmed.

The facts are stated in the opinion of the court.

CHILDERS & DOBSON and B. S. RODEY for appellants.

"A court of equity will not take jurisdiction of a bill for the mere purpose of settling disputed boundaries." Am. and Eng. Ency. Law, 693; Wilcott v. Robbins, 26 Conn. 226, note; Doggert v. Hart, 5 Fla. 215; Dickerson v. Stoll, 8 N. J. Eq. 294; Top v. Williams Humph. (Tenn.) 569; Bresler v. Pitts, 58 Mich. 347. See, also, Whitehead v. Shattock, 138 U. S. 146.

CATRON & SPIESS for appellee.

Where there is nothing special in the matter of reference, the findings of the master can not be reviewed, except in matters of gross mistake or irregularity, or where there is no evidence to support his findings, or where the great weight of the evidence is against the parties, and there is manifest error. Mason v. Crosby, 3 W. & M. 269; Metzger v. Bombrake, 108 U. S. 73; Harding v. Handy, 11 Wheat. 126; Kimberly v. Arms, 129 U. S. 524; Tilgham v. Proctor, 125 Id. 149, and citations; Calahan v. Myers, 128 Id. 666; Bridges v. Sheldon, 7 Fed. Rep. 35–37; In re Murray, 13 Id. 550; McDaniel v. Harbru, 43 Vt. 48; Howe v. Russell, 36 Me. 115; Richards v. Todd, 127 Mass. 172; Trow v. Berry, 113 Id. 146; Newcomb v. White, 5 N. M. 435; Davis v. Schwartz, 155 U. S.

This bill is maintainable, if for no other purpose, to wipe out the deed of Crossan and wife to Kennedy, and as makers of the deed they are proper parties to

join with him. When the court has jurisdiction for one purpose, it has it for all purposes which may be necessary to a complete settlement of the whole case. Pool v. Docker, 92 Ill. 509; Hawley v. Simons, 14 N. E. Rep. 7; Blakey v. Blakey, 9 Ala. 391; Pearson v. Darrington, 21 Id. 169; Martin v. Tidwell, 36 Ga. 332; Keeton v. Spradling, 13 Mo. 321; Sounder's Appeal, 57 Pa. St. 498; Sanborn v. Kittridge, 20 Vt. 632; Barnes v. Dow, 59 Id. 530; McMurray v. Van Gilder, 56 Iowa, 605; Bouldin v. Reynolds, 50 Md. 171.

The bill, to a certain extent, is intended to determine the boundaries of land, for which purpose it can be maintained whenever such determination is connected with the incidental fact that it will avoid a multiplicity of suits, as in this case. Deveany v. Gallagher, 5 Green (N. J. Eq.), 33; Fraley v. Peters, 12 Bush. (Ky.) 469; Perry v. Pratt, 31 Conn. 440; 2 Beach, Mod. Eq. Juris., sec. 102, and citations. See, also, 3 Pom. Eq. Jur. 1384, 1385, and citations; Merriman v. Russell, 2 Jones, Eq. 471; Atty. Gen. v. Stevens, 6 D. G. M. G. 136.

BANTZ, J.—This is a suit in chancery by bill to quiet title to certain lands. The appellants and appellee deraign title from substantially the same persons. The deed under which Gentile claims was made March 29, 1880, and conveyed to his grantor certain lands, as far as "the hills" (los lomas), or "The Hills" (Las Lomas). Crossan, one of the defendants (appellants), though he had inspected Gentile's deed, and had actual knowledge of his claim of ownership, formed the opinion that Gentile's title did not extend to the land in question; and on December 10, 1888, he sought the persons who had made the deed of March 29, 1880, and, under representations to them that it did not interfere with the title they had previously conveyed, procured from them another deed, conveying to Mrs.

Crossan the land in question and the adjoining land further east. Kennedy afterward bought an interest from Mrs. Crossan. Although 'it is a matter of no particular consequence in this case, it appears that the Crossans were purchasers with full notice, who have relied upon the accuracy of their opinion for the profit of the speculation. The case was referred to a special master, to take the proofs, and report his findings of fact and conclusions of law. The master found the law and the facts in favor of Gentile. The district court approved the report, and the cause is here on appeal.

It has been held by this court in a series of cases that the findings of a. master upon conflicting testimony will not be disturbed where the record shows there is any evidence upon which such findings can be based. De Cordova v. Korte (Sup. Ct. N. M.; July term, 1895), 41 Pac. Rep. 526; Field v. Romero, 41 Pac. Rep. (N. M.) 517; Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237. The deed under which Gentile holds bounds the lands on the east by "the hills." As to the location of "the hills," and as to the meaning of that description by reference to local objects, both sides introduced a mass of testimony. The master found the hills mentioned in the deed to lie east of and beyond the lands in question. That finding is abundantly supported by the evidence, and we would have reached the same conclusion.

But it is objected that a court of equity is without jurisdiction in this case; that the proper remedy was at law, by action in ejectment, where both parties may enjoy the constitutional right of trial by jury. It will not be necessary to pass upon or consider the validity of section 2214, Compiled Laws, which permits a bill to be brought to quiet title, whether the complainant be in or out of possession. A decision of that question is not necessary here. It is undoubtedly true that

courts of equity generally have no jurisdiction to quiet title unless complainant is in possession. Wehrman v. Conklin, 155 U. S. 314, 15 Sup. Ct. 129. In this case the master found that each party was in actual possession of portions of the land mentioned in his and her deeds, respectively,—Gentile on land lying west of Edith street; Crossan and Kennedy on land lying east of High street; the lands in controversy lying between, and of that neither party had the actual possession. The appellants contend that the finding of the master is not supported by the evidence, and that, in truth, the record shows beyond controversy that appellants were in the actual possession of the land in question, openly and exclusively.

We have carefully examined the record on this question, as counsel for appellants have insisted upon the point with great earnestness. The record shows that Gentile testified that a powder house built on the land near the junction of High street and the Tejeras road was put up by one of his tenants. Pizutti testified that, under directions of Gentile, he built a fence around the north, south, and west sides of the land in controversy, about two years before this suit was brought; that Crossan objected to the building of the fence while it was being done; but that it was built notwithstanding his objections; and that Crossan then built a fence across the east side of the land in question. The land was thus substantially inclosed, the east fence put up by Crossan separating this land from the lands upon which his house stood. Greenleaf, Capilupi, Krawinkle, and others testify to the existence of the fence around the four sides of this land; and Crossan admits that the three sides were put up by Gentile, and that he put up the fourth or east side fence himself. It appears from the testimony, and is not denied, that Gentile's solicitor called Crossan's

*Margin note: TITLE to land, suit to quiet: possession: seizin.*

attention to the east fence, as defining the possession of the respective parties; and shortly afterward this fence put up by Crossan disappeared by some unknown agency. Crossan admitted that he saw notices of Gentile's claim of ownership posted on the land as far east as the place where Crossan's house was afterward built. About two weeks before this suit was brought, Gentile's solicitor saw Crossan's surveyor inside the inclosure, surveying the land. The surveyor was told of Gentile's ownership, and directed to leave, which he thereupon did. Some of the witnesses for appellants testify that Crossan resided upon the land, but it is undisputed that his residence house was east of the fence, and east of the land in dispute. Some of the witnesses called the fences inclosing this land "Crossan's fences," but this was evidently a mistake of fact or a bad guess at the law. Mr. Kennedy (appellant) testified that, when he bought, Crossan seemed to be in possession; but he admits that he did not know that Gentile had put up the fences on three sides, and that Crossan had built it on the other. Appellants admitted that the actual, open, and exclusive possession of the land lying west of Edith street had been held under the deed of March 29, 1880, since the date of said deed. There was also evidence to show that Crossan did some repairing of the fences, and paid the taxes, and turned some cows upon the land after the east fence had been removed.

The foregoing recitals from the testimony sufficiently show that appellants' contention is not well founded, as they not only do not show actual possession of the land in dispute by Crossan, but do show an actual possession by Gentile. The removal of the fence by the unknown trespasser, after Crossan had himself openly limited the extent of his actual possession, did not operate to enlarge the area of that possession. We do not think his claim of possession,

coupled with occasional acts, such as repairing fences, procuring a survey of the land, the grazing of cattle, and the payment of taxes, were in their nature so definite, exclusive, and notorious as to amount to an ouster of Gentile, who held, at least, the constructive possession arising from his deed and the actual possession of the adjoining lands also embraced in his deed. The law does not require so absurd a thing as that a person must occupy every inch of his land to maintain his possession of it. The rule is that the possession of one who enters upon land under a deed is construed to be coextensive with the tract described in his deed. 3 Wash. Real Prop. 138. And where two persons, as in the case at bar, are in the actual possession of different parts of a tract, each holding under adverse deeds, covering also land in dispute between them, but neither of them is in the actual possession of the land in dispute, then the law adjudges the seizin of all of the land not in the actual occupancy of the adverse party to be in him who has the better title. Clarke v. Courtney, 5 Pet. 354. Both can not be seized, and seizin consequently follows the title. 3 Wash. Real Prop. 138. It is "a principle of universal application that the law never raises a constructive possession against the real owner of land;" and "if an entry be wrongful, though it be under a deed, a possession thereby gained will only extend so far as the tenant shall actually occupy the premises." Id. 164. "If the true owner be at the same time in actual possession of part of the land, claiming title to the whole, the constructive possession is in him of all the land not in the actual possession of the intruder" (Hunnicutt v. Peyton, 102 U. S. 333); and that constructive possession continues until there has been an ouster by actual adverse possession (Ewing v. Burnet, 11 Pet. 41). Gentile stands in that position. He has the better title to the land in dispute, and his deed covers that land, and also the

adjoining land, of which he has the conceded posses-
sion. The constructive possession of the land in ques-
tion by Gentile since 1880 being shown, that possession
must be presumed to continue until its loss by ouster
has been proved. 3 Wash. Real Prop. 156. Nothing
which appellants have done amounts to such ouster,
rendering it at all necessary for him to bring eject-
ment. If a trespasser, however loud and persistent
his claim of ownership, can work an ouster by irregu-
lar, occasional, or equivocal acts, though under color
of a deed, the statute of limitations would be put in
motion against the true owner, it may be without ade-
quate warning of the peril to his title, and he would
lose his property or be put to the expense of an action
in ejectment. Therefore the law wisely holds that an
ouster disseizin must be manifested unequivocally, by
some open, visible, continued, and exclusive exercise
of ownership done on the land adverse to him who has
constructive possession; and, until such an ouster is
shown, constructive possession is not lost, and an
action in ejectment is not necessary. While there is
great difficulty in laying down precise rules by which
the question of adverse possession is to be determined
in all cases, certain general rules are well established.
"In the first place, inasmuch as the title of the true
owner may, by the statute [of limitations], be often
divested by the wrongful act of another, the law is
stringent in requiring clear proof of the requisite
facts." There must be—First, an actual occupancy,
clear, definite, positive, and notorious; second, it
must be continued, adverse, and exclusive; and, third,
it must be with an intention to claim title to the lands
occupied. 3 Wash. Real Prop. 146. The master
found that neither party was in the actual possession
of the disputed land. No injury was done appellants
by that finding, as we are disposed to believe that the
inclosure of the lands was sufficient evidence of the

actual possession by Gentile. The question remaining is whether, under the findings of the master, the court has jurisdiction. We think the constructive possession under the calls of the deed, and the actual possession of the land west of Edith street, show the pedis possessio to be in Gentile, and that it gives him a standing in a court of equity to the relief here sought. But, moreover, when neither party is in the actual or constructive possession, and there is no tenant to the praecipe against whom ejectment can be brought, equity alone can afford relief. Whitehead v. Shattuck, 138 U. S. 150; Holland v. Challen, 110 U. S. 15; Ely v. Railroad, 129 U. S. 291. There is no error in the record. The decree will, therefore, be affirmed.

*Equity jurisdiction.*

SMITH, C. J., and HAMILTON, J., concur.